UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLORENCE BELLA, as trustee of the Yismach Lev 1 Trust, on behalf of herself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>WILTON REASSURANCE LIFE OF NEW YORK,<br><br>　　　　　　　Defendant. | Civil Action No. 1:23-cv-01613<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff FLORENCE BELLA, as trustee of the Yismach Lev 1 Trust, on behalf of herself and all others similarly situated, for her Class Action Complaint against defendant Wilton Reassurance Life of New York ("Wilton"), states as follows:

## NATURE OF THE ACTION

1. This is a class action brought on behalf of Plaintiff and similarly situated owners of certain life insurance policies insured by Wilton. Plaintiff seeks to represent a class of Wilton policyholders who have been forced to pay unlawful and excessive cost of insurance ("COI") charges.

2. Plaintiff, along with numerous other Wilton policyholders, has been forced to pay inflated COI charges that are not allowed by the plain language of their insurance contracts. The subject Wilton policies specify that "Monthly cost of insurance rates are determined by us, based on our expectations as to future mortality experience." The policies further state that Wilton "will

1

review our expectations at least once every five years and whenever cost of insurance rates for new issues of this policy change[.]"

3. Under this policy language, if Wilton's expectations as to future mortality experience improve, COI rates must reflect this improvement.

4. Nationwide mortality experience has *improved* significantly over the past several decades. Wilton's expectations as to future mortality experience have likewise substantially changed in its favor. Insureds are living longer than originally anticipated when the policies at issue were first priced, which means that Wilton collects more COI and other charges and pays out death benefits later than originally anticipated.

5. Despite this vastly improved mortality experience, Wilton has not lowered the COI rates it charges its customers as required by the policies. For Plaintiff, Wilton has in fact routinely increased COI rates year-over-year.

6. It is apparent that Wilton wrongly construes its policies as granting it a nonsensical "heads I win, tails you lose" power, reserving the right to *increase* COI rates if mortality experience is worse than anticipated, but not requiring it to *decrease* COI rates in the face of years and years of improved mortality experience. This interpretation has already been rejected by other courts when advanced by other carriers; it is unfair; and it is contrary to the plain language of the policies. As a result of this misconduct, Plaintiff seeks monetary relief for the COI overcharges that Wilton has wrongly imposed on Plaintiff and all of its similarly situated customers who each own policies with the same language at issue here.

## THE PARTIES

7. Plaintiff is the trustee of the Yismach Lev 1 Trust and is domiciled in New York. The Trust owns a Flexible Premium Adjustable Life Insurance Policy, policy number

LN00483030, insuring the life of Joseph Schwartz, which was issued by Wilton's predecessor North American Company for Life and Health Insurance of New York on August 16, 1993, and currently has a face value of $1,000,000 (the "Schwartz Policy"). At issuance, Joseph Schwartz was age 43.

8. Defendant Wilton Reassurance Life Company of New York is a corporation organized and existing under the laws of New York, having its principal place of business in Norwalk, Connecticut. Wilton Reassurance Life Company of New York is a wholly owned subsidiary of Wilton Reassurance, which itself is a subsidiary of the Canada Pension Plan Investment Board.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member and one defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

10. This Court has personal jurisdiction over Wilton because it is domiciled in New York.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)–(d) because Wilton is deemed to reside in this District and the events giving rise to causes of action for members of the class occurred in this District, including the issuance of policies to and improper collection of COI rate overcharges from persons residing in this District.

## FACTUAL BACKGROUND

A. **Cost of Insurance**

12. Universal and variable universal life policies ("UL" policies) combine death benefits with a savings or investment component, often known as the "account value" or "accumulated value." One benefit of UL policies is that they permit policyholders flexibility in the amount and timing of premiums necessary to keep the policies in-force. Unlike other kinds of whole life insurance that require fixed monthly premium payments, the premiums required for UL policies need only be sufficient to cover the COI charges and certain other specified expenses. The COI charge is deducted from the account value (i.e., the savings component) of the policy every month, so the policyholder forfeits the COI charge entirely to the insurer. Any premiums paid in excess of COI charges and other charges are applied to the account value. These excess premiums earn interest at the credited rate. This structure is beneficial because it allows policyholders to set the savings level within the policy and earn a return that exceeds a specified minimum.

13. The size of the COI charge is highly material to universal life policyholders. First, it can dictate the minimum amount of money that must be paid to keep a policy in force. Second, high COI rates can quickly diminish account value and reduce the amount of money on which interest can be earned. Absent a secondary guarantee, if the policy value diminishes such that COI charges and certain other specified expenses can no longer be deducted, then the policy will go into grace and, if no additional premiums are paid after adequate time provided by an accurate grace notice, the policy may lapse.

14. The Schwartz policy has the following language about how the monthly rate– known as the "Cost of Insurance Rate" – used to calculate the COI charge will be determined:

> **Cost of Insurance Rates.** The monthly cost of insurance rate is based on the sex, attained age, and rating class of the Insured. Attained age for the initial Specified

Amount means age nearest birthday on the prior policy anniversary. Attained age for any increase in Specified Amount or increase in net amount at risk applied for when changing Death Benefit options means age nearest birthday on the prior anniversary of the date such increase became effective. <u>Monthly cost of insurance rates are determined by us, based on our expectations as to future mortality experience.</u> Any change in cost of insurance rates: (1) applies to all individuals of the same class as the Insured; and (2) is determined in accordance with procedures and standards on file with the Insurance Department. Under no circumstances are cost of insurance rates for Insured in the standard risk class greater than those shown in the Table of Guaranteed Maximum Insurance Rates. For sub-standard issues higher guaranteed maximum rates apply. Age nearest birthday is used in determining such guaranteed maximum rates.

<u>We review our expectations at least once every five years and whenever cost of insurance rates for new issues of this policy change, but no more than once each year. If necessary we change the cost of insurance rates in conjunction with our review.</u>

15. Under this language, as expectations as to future mortality experience change, so too must COI rates, meaning that expectations as to future mortality experience is the only factor that Wilton may, and must, use to determine adjustments in monthly COI rates. An endorsement appended to Plaintiff's policy provides only one exception to this contractual requirement, stating: "The Cost of Insurance Rates, on page 9, of your policy is amended and the following is added: A portion of the Cost of Insurance rate may represent a recovery of expenses associated with the administration of the Policy and such recovery may be greater in the early policy years. All other terms, provisions, and conditions of the entire Policy remain unchanged except as stated herein."

16. Thus, for Plaintiff's policy and any other policies with this endorsement, monthly COI rates must be determined based on Wilton's future mortality expectations, but those rates may also be used to recover "expenses associated with the administration of the Policy." As discussed below, administrative expenses for universal life policies are *de minimis*, particularly for policies issued decades ago, and do not and could not possibly offset the improvement in Wilton's mortality expectations.

5

17.     The set of policies at issue in this case include all universal and variable universal life policies issued on the policy forms of the Schwartz policy, and all policies insured by Wilton stating that COI rates are determined "based on our expectations as to future mortality experience." These policies are referred to as "COI Overcharge Class Policies."

18.     The COI Overcharge Class Policies at issue are all form policies, and owners are not permitted to negotiate different terms. The Class Policies are all contracts of adhesion.

### B.      Improving Mortality and Wilton's Unlawful Failure to Reduce COI Rates Based on Improvement in Expectations as to Future Mortality Experience.

19.     Wilton has not decreased its COI rates for COI Overcharge Class Policies despite the fact that mortality rates have improved steadily *each year* – i.e., mortality risks have gotten *better* for Wilton over time, as people are living much longer than anticipated when the products were priced and issued. In fact, Wilton has been routinely applying an increasing scale of COI rates as insureds age, but those new, changed rates do not reflect any of the overall mortality improvement that has occurred since the policies were issued in the late 1980s and 1990s.

20.     Wilton systematically quantifies its "expectations as to future mortality experience" every year. Wilton performs experience studies that examine its historical mortality experience and, as a result of that mortality experience, develop predictions of the mortality experience it expects to see in the future. These expectations are explicitly quantified in the form of mortality tables, which are tables showing expected mortality rates, namely probabilities of death for any insured at any point in time. Separate tables are produced to reflect groups with different mortality. For example, mortality tables often have separate rates for each gender, rating class, and attained age. Mortality tables are used by actuaries to calculate COI rates, and, if developed properly, such COI rates are designed to reflect expectations as to future mortality experience.

6

21. Mortality expectations are also studied periodically on an industry-wide basis. Beginning at least as early as 1941, the National Association of Insurance Commissioners (NAIC) has issued a series of Commissioners Standard Ordinary (CSO) mortality tables. These are industry-standard mortality tables that are commonly used by insurers to calculate reserves and to set maximum permitted cost of insurance rates in universal life policies. CSO tables are also incorporated into I.R.S. regulations to define what constitutes "life insurance," what constitute "reasonable mortality charges," and what is deductible for federal tax purposes.

22. The 1980 table issued by the NAIC was called the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table ("1980 CSO Mortality Table"). That table was the industry-standard table until 2001. In 2001, at the request of the NAIC, the Society of Actuaries (SOA) and the American Academy of Actuaries (Academy) produced a proposal for a new CSO Mortality Table. The accompanying report from June 2001 explained that (a) the 1980 CSO Mortality Table was still the industry-standard table and (b) expected mortality rates had improved significantly each year since the 1980 table issued. The report stated:

> The current valuation standard, the 1980 CSO Table, is almost 20 years old and mortality improvements have been evident each year since it was adopted. . . . [C]urrent mortality levels . . . are considerably lower than the mortality levels underlying the 1980 CSO Table.

23. The report further explained that "[f]or most of the commonly insured ages (from about age 25 to age 75), the proposed 2001 CSO Table mortality rates are in the range of 50% to 80% of the 1980 CSO Table." This means the tables are showing a substantial improvement in mortality in a 20-year time period. The final proposed tables were adopted as the 2001 Commissioners Standard Ordinary Mortality Table ("2001 CSO Mortality Table"). The 2001 CSO Mortality Table reflected vastly improved mortality experience as compared to the 1980 CSO Mortality Table.

24. Since the 2001 CSO Mortality Table was introduced, the SOA has continued to conduct surveys of large life insurance companies for the death rates actually observed in their policies and compares these to published mortality tables. These surveys have consistently showed mortality improvements over the last three decades, particularly for ages 70-90. For example, the SOA published Individual Life Experience Reports for the periods 2002-2004; 2005-2007 and 2008-2009, each noting strong rates of improvement in mortality. Periodically the SOA will publish an updated table to reflect the evolving industry experience. Major updates they have published over the last few decades include: (a) 2001 Valuation Basic Mortality Table, (b) 2008 Valuation Basic Table, and (c) 2015 Valuation Basic Table. Each of these updates confirms that mortality had continued to significantly improve from the 2001 CSO Table. Other surveys have also noted mortality improvements. In May 2013, for example, the reinsurance company RGA published a report sponsored by the SOA enumerating mortality rates and mortality improvements at older ages, which showed material rates of mortality improvements. These improvements have resulted in lower costs to insurers, which, pursuant to the policy language, should be passed on to policyholders through lower cost of insurance charges.

25. Recognizing that mortality expectations have improved, Wilton's parent Wilton Re has in fact advertised to its investment customers that they should engage in "longevity risk transfers" to Wilton Re. Wilton Re touted that "*With increasing life expectancy*, longevity risk is one of the most compelling insurance risks facing the industry." *See* https://www.wiltonre.com/longevity-solutions/.

26. But even as Wilton has benefited from that increasing life expectancy as it has had to pay fewer death benefits to members of the class, it has refused to pass on the financial benefit of that increased life expectancy on to policyholders.

27. This violates at least two provisions of the policies. First, it means that Wilton has not been determining monthly COI rates "based on [its] expectations as to future mortality experience," as required by the plain terms of the policies. Rather, it has been increasing COI rates repeatedly, using its decades-old COI rate scales that do not in any way reflect its current expectations as to future mortality experience, or even its mortality expectations from any point in the past five years. Second, confirming that Wilton has a prospective obligation to reduce COI rates in the event of mortality improvement, the policies mandate that Wilton review its expectations "at least once every five years and whenever cost of insurance rates for new issues of this policy change," and "[i]f necessary [to] change the cost of insurance rates in conjunction with our review." As discussed, Wilton has been reviewing its mortality expectations annually, but it has not been changing the cost of insurance rates to reflect those mortality expectations, as is "necessary" under the terms of the policies. To the extent that Wilton is also permitted to change COI rates to recover "expenses associated with the administration of the Policy," such expenses are *de minimis* and have not materially increased at all, let alone to a degree that they could possibly offset the value of mortality improvement. The administrative expenses associated with a universal life policy are generally in the range of $50–150 per year, per policy. Wilton has been charging Plaintiff thousands of dollars per year in COI charges.

## CLASS ACTION ALLEGATIONS

28. This action is brought by Plaintiff individually and on behalf of the "COI Overcharge Class" pursuant to Rules 23(b)(3) of the Federal Rules of Civil Procedure.

29. The COI Overcharge Class consists of:

> All current and former owners of universal life (including variable universal life) insurance policies issued or insured by Wilton Reassurance Life of New York and its predecessors in interest that provide for (a) an insurance or cost of insurance charge or deduction calculated using a rate based on expectations as to future

mortality experience, (b) additional but separate policy charges, deductions, or expenses, (c) an investment, interest bearing, or savings component, and (d) a death benefit.

30. Plaintiff reserves the right to seek certification of subclasses, or alternative classes, by original issuing company, product, state of issue, or dates of ownership.

31. The COI Overcharge Class consist of hundreds of consumers of life insurance and are thus so numerous that joinder of all members is impracticable. The identities and addresses of class members can be readily ascertained from business records maintained by Wilton.

32. The claims asserted by Plaintiff are typical of the claims of the COI Overcharge Class.

33. Plaintiff will fairly and adequately protect the interests of the classes and does not have any interests antagonistic to those of the other members of the class.

34. Plaintiff has retained attorneys who are knowledgeable and experienced in life insurance matters and COI matters, as well as class and complex litigation.

35. Plaintiff requests that the Court afford class members with notice and the right to opt-out of any classes certified in this action.

36. This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the class predominate over any individualized issues. Those common questions that predominate include:

(a) the construction and interpretation of the form insurance policies at issue in this litigation;

(b) whether Wilton's actions in failing to decrease the cost of insurance charges imposed on the COI Overcharge Class violated the terms of those form policies;

  (c) whether Wilton breached the policy provision stating that "Monthly cost of insurance rates are determined by us, based on our expectations as to future mortality experience";

  (d) whether Wilton "review[ed]" its "expectations at least once every five years and whenever cost of insurance rates for new issues of this policy change, but no more than once each year";

  (e) whether Wilton breached its contracts with Plaintiff and members of the class; and

  (f) whether Plaintiff and members of the proposed Class are entitled to receive damages as a result of the unlawful conduct by defendant as alleged herein and the methodology for calculating those damages.

  37. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

  (a) the complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

  (b) when Wilton's liability has been adjudicated, claims of all class members can be determined by the Court;

  (c) this action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

  (d) without a class action, many class members would continue to suffer injury, and Wilton's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

(e)     this action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

38.     Plaintiff realleges and incorporate herein the allegations of the paragraphs above of this complaint as if fully set forth herein. This claim is brought on behalf of plaintiff and the COI Overcharge Class.

39.     The Class Policies are binding and enforceable contracts.

40.     Wilton breached the contract by deducting COI charges calculated from COI rates that had not been determined based on Wilton's expectations as to future mortality experience. These overcharges include, but are not limited to, the excess COI charges that Wilton's deducted by not reducing COI rates due to improved mortality.

41.     Wilton's failure to decrease COI rates to reflect its improved mortality expectations also violated the contracts' requirement that Wilton "review our expectations at least once every five years and whenever cost of insurance rates for new issues of this policy change, but no more than once each year" and "[i]f necessary . . . . change the cost of insurance rates in conjunction with our review."

42.     Wilton's failure also breaches the covenant of good faith and fair dealing that is implied by law in all contracts.

43.     Plaintiff and the COI Overcharge Class have performed all of their obligations under the policies, except to the extent that their obligations have been excused by Wilton's conduct as set forth herein.

44. As a direct and proximate cause of Wilton's material breaches of the policies, Plaintiff and the COI Overcharge Class have been – and will continue to be – damaged as alleged herein in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the COI Overcharge Class pray for judgment as follows:

1. Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Awarding Plaintiff and the class compensatory damages;

3. Awarding Plaintiff and the class pre-judgment and post-judgment interest, as well as any costs and attorneys' fees allowed by law; and

4. Awarding Plaintiff and the class such other relief as this Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff and the class hereby demand a trial by jury as to all issues so triable.

Dated:  February 27, 2023                          Respectfully submitted,


*/s/ Ryan C. Kirkpatrick*
Seth Ard
Ryan C. Kirkpatrick
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: 212-336-8330
Facsimile: 212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

Steven G. Sklaver (*pro hac vice* to be filed)
Glenn C. Bridgman (*pro hac vice* to be filed)
Nicholas N. Spear (*pro hac vice* to be filed)
Rohit D. Nath (*pro hac vice* to be filed)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: 310-789-3100
Facsimile: 310-789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
nspear@susmangodfrey.com
rnath@susmangodfrey.com

*Attorneys for Plaintiff*