UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
FLORENCE BELLA, *as trustee of the* :
*Yismach Lev 1 Trust, on behalf of herself and* :
*all others similarly situated*, :
: 23-CV-1613 (VSB)
Plaintiff, :
: **OPINION & ORDER**
- against - :
:
:
WILTON REASSURANCE LIFE OF NEW :
YORK, :
:
Defendant. :
:
------------------------------------------------------------X

Appearances:

Ryan C. Kirkpatrick
Susman Godfrey LLP
New York, NY

Steven G. Sklaver
Glenn C. Bridgman
Monica Daegele
Nicholas N. Spear
Rohit Nath
Susman Godfrey LLP
Los Angeles, CA
*Counsel for Plaintiff*

Jeffrey S. Kramer
Carl C. Scherz
Matthew K. Hansen
Taylor Levesque
Troutman Pepper Locke LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

  Plaintiff Florence Bella, as trustee of the Yismach Lev 1 Trust, on behalf of herself and

all others similarly situated ("Plaintiff"), brings this class action against Defendant Wilton Reassurance Life of New York ("Wilton"), alleging breach of contract. Plaintiff and the prospective class members are policyholders of a universal life insurance policy with a variable cost of insurance ("COI") rate that was issued by Wilton's predecessor, North American Company for Life and Health Insurance of New York ("Contract" or "Policy"). Plaintiff alleges that Wilton breached its agreement by failing to decrease the monthly COI charges as expressly required by the Contract's terms. Before me is Wilton's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Wilton asserts that Plaintiff's sole claim is based on an erroneous, unreasonable reading of the language of the Contract and therefore must be dismissed. Because I find that Plaintiff plausibly alleges a breach-of-contract claim, Wilton's motion to dismiss is DENIED.[1]

## I. Factual Background[2]

### A. *Universal Life Insurance Policies*

Universal life insurance is a type of life insurance that permits "policyholders flexibility in the amount and timing of premiums necessary to keep the policies in-force." (Doc. 1 ("Compl.") ¶ 12.) Unlike those associated with whole life insurance policies, premiums for universal life insurance policies ("UL policies") are not fixed amounts covering the insured for life, but instead need only "cover the COI charges and certain other specified expenses." (*Id*.) UL policies have a savings or investment aspect—the "account value" or the "accumulated

---

[1] Plaintiff also requested leave to amend her complaint if I grant Wilton's motion to dismiss. Because I deny the motion to dismiss, Plaintiff's request for leave to amend is denied as moot.

[2] The facts in this section are based upon the factual allegations set forth in the complaint, (Doc. 1 ("Complaint" or "Compl.")), as well as the documents "incorporated in it by reference," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). I assume the allegations in the Complaint to be true in considering the motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such finding.

value," which is funded initially by the initial net premium paid by the policyholder. (*See id.*) The monthly COI charges that are paid to the insurer are deducted from this account value. (*Id.*) The amount of the required COI charges are calculated by the insurer using a policy provision known as the "COI rate." To the extent a policyholder pays a premium greater than the total sum of the COI charges and other specified charges, the excess premium is applied to the account value, as is any interest credited at a specified rate. (*Id.*) If the account value is insufficient to cover the monthly COI charges and certain other specified expenses, and no secondary guarantee is in effect, the policy will "go into grace" and may eventually lapse. (*Id.* ¶ 13.)

### B. *Class Universal Life Insurance Contracts*

#### 1. The COI Rate Provision

Plaintiff's universal life insurance policy[3]—the Contract—was issued on August 16, 1993. (Compl. ¶ 7.) The Contract includes multiple insurance provisions, the construction and interpretation of which are at issue. The first of these policies is the following "Cost of Insurance Rates" provision (the "COI Rate Provision"):

> The monthly cost of insurance rate is based on the sex, attained age, and rating class of the Insured. Attained age for the initial Specified Amount means age nearest birthday on the prior policy anniversary. Attained age for any increase in Specified Amount or increase in net amount at risk applied for when changing Death Benefit options means age nearest birthday on the prior anniversary of the date such increase became effective. Monthly cost of insurance rates are determined by us, based on our expectations as to future mortality experience. Any change in cost of insurance rates: (1) applies to all individuals of the same class as the Insured; and (2) is determined in accordance with procedures and standards on file with the Insurance Department. Under no circumstances are cost of insurance rates for Insured in the standard risk class greater than those shown in the Table of Guaranteed Maximum Insurance Rates. For sub-standard issues higher guaranteed maximum rates apply. Age nearest birthday is used in determining such guaranteed maximum rates.

---

[3] Plaintiff is the trustee of the Yismach Lev 1 Trust, which owns the Flexible Premium Adjustable Life Insurance Policy insuring the life of Joseph Schwartz. (Compl. ¶ 7.)

3

> We review our expectations at least once every five years and whenever cost of insurance rates for new issues of this policy change, but no more than once each year. If necessary we change the cost of insurance rates in conjunction with our review.

(*See* Doc. 22-1 (Contract[4]) at 12.[5]) The COI Rate Provision dictates how Wilton calculates and adjusts the COI rate, and thus the monthly COI charges applicable to policyholders. The COI Rate Provision was later amended through an endorsement (the "Policy Endorsement") which states:

> A portion of the Cost of Insurance rate may represent a recovery of expenses associated with the administration of the Policy and such recovery may be greater in the early policy years. All other terms, provisions and conditions of the entire Policy remain unchanged except as stated herein.

(Contract 18.)

### 2. Expectations as to Future Mortality

As set forth in the Contract, Wilton determines COI rates "based on" its expectations as to future mortality experience ("EFME"). Wilton quantifies its "expectations as to future mortality experience" each year by performing studies that examine its historical mortality experience. (Compl. ¶ 20). This information is quantified in "mortality tables," which set forth the "probabilities of death for any insured at any point in time," a metric known as "expected mortality rates." (*Id.*) "Mortality tables are used by actuaries to calculate COI rates," which are "designed to reflect expectations as to future mortality experience." (*Id.*)

"Mortality expectations are also studied," and the resulting mortality tables periodically published, "on an industry-wide basis." (Compl. ¶ 21). These tables are used by insurers to set

---

[4] Plaintiff does not dispute that I can consider Document 22-1. For the purposes of this Opinion & Order only, I assume that Document 22-1 constitutes the Contract. I make no factual finding that Document 22-1 accurately and comprehensively reflects the Contract.

[5] Because Document 22-1 contains several documents, I cite the PDF pagination.

maximum COI rates.  (*Id.*)  Previously, the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table ("1980 CSO Mortality Table"), issued by the National Association of Insurance Commissioners ("NAIC"), was the industry-standard mortality table.  (*Id.* ¶ 22.)  In 2001, however, a new table was adopted, which is now the operative industry standard.  (*Id.* ¶¶ 22–23.)  "The 2001 CSO Mortality Table reflected vastly improved mortality experience as compared to the 1980 CSO Mortality Table."  (*Id.* ¶ 23.)  In addition, surveys of large life insurance companies conducted since 2001 have reflected mortality improvements over the last three decades, particularly for ages 70–90.  (*Id.* ¶ 24.)

## II. Procedural History

Plaintiff filed a class-action complaint on February 27, 2023.  (Doc. 1.)  On May 30, 2023, Defendant filed its motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 20), and an accompanying memorandum of law, (Doc. 21 ("Mem.")) On July 18, 2023, Plaintiff filed a letter motion requesting to file its opposition unredacted under seal and redacted publicly.  (Doc. 29.)  That same day, Plaintiff filed both an unredacted opposition to Defendant's motion to dismiss under seal, (Doc. 30), and a redacted version of the opposition brief publicly, (Doc. 31 ("Opp'n")).  On August 17, 2023, Defendant filed its reply. (Doc. 36 ("Reply")).

## III. Legal Standards

### A. *Motion to Dismiss Under Rule 12(b)(6)*

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff

5

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* at 153 (quoting *Int'l Audiotext*, 62 F.3d at 72).

### B. *Interpreting Insurance Contracts*

Insurance policies are contracts, and therefore "must be construed to effectuate the intent of the parties as derived from the plain meaning of the policy's terms." *Andy Warhol Found. for the Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999).[6] "At the motion to

---

[6] The parties agree that their dispute turns on principles of New York contract interpretation. (*See* Mem. 8; Opp'n 7.)

dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). "[A] contract is ambiguous if its terms 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (quoting *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010)). There is no ambiguity "where the contract language has a definite and precise meaning." *Id*. (quoting *Maverick Tube*, 595 F.3d at 467).

## IV. Discussion

The Contract language at the center of the parties' dispute provides that "[m]onthly cost of insurance rates are determined by us, based on our expectations as to future mortality experience," rates that Wilton changes "[i]f necessary." (Contract 12.) Plaintiff claims that Wilton must prospectively decrease COI rates when its mandated review at least every five years—which, as a matter of practice, Wilton undertakes annually (Compl. ¶ 27)—reflects an improvement in nationwide mortality and thus EFME, (Opp'n 1). In alleging that Wilton breached its obligations under the Contract because it has not decreased its COI rates, Plaintiff points to two policy terms and their purportedly plain-meaning interpretation. First, Plaintiff alleges that Wilton's failure to reduce the COI rates violates the Contract's mandate that Wilton must "change the cost of insurance rates" "if necessary." (Compl. ¶ 27.) Second, Plaintiff claims that Wilton has not been determining COI rates "based on" EFME exclusively, as the Contract expressly requires. (*Id.*)

Wilton moves to dismiss the Complaint, asserting that Plaintiff cannot plausibly establish that Wilton breached the contract because Plaintiff's interpretation of the Contract—including the meaning and implication of the terms "based on" and "if necessary"— is "inherently contrary" to the contract's unambiguous "plain language." (Opp'n 1.)  Specifically, Wilton asserts that the Contract does not require Wilton to reduce COI rates because:  (i) it is unreasonable to interpret the Contract to require Wilton to adjust the COI rates "any time" there was a change in EFME; and (ii) the contract term "based on" does not connote exclusivity, such that Wilton is free to consider other factors besides EFME when determining COI rates. (*Id.* at 7.)  Put another way, Plaintiff's Complaint stands and falls on the reasonableness of its interpretation of the meaning of certain policy terms, and whether the Contract mandates that Wilton decrease prospective COI rates when EFME improves.  Absent this contractual mandate, Wilton argues that its failure to decrease COI rates cannot plausibly be alleged as a breach of contract.  Wilton also disputes the claim that EFME "actually improved so much that it required a reduction in the Policy's COI rates." (*Id.*)

### A. *Defining the Scope of the "Contract"*

As an initial matter, the parties disagree about which documents should be properly considered at the motion-to-dismiss stage.  In addition to the Complaint, which includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," I can also consider a document "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers*, 282 F.3d at 152–53 (internal quotation marks omitted).

Wilton attaches three documents that it argues are "integral" to the Complaint and thus subject to my review and consideration at the motion-to-dismiss stage:  (1) the life insurance

policy—the Contract—at issue here, (Doc. 22-1); (2) an Actuarial Memorandum, (Doc. 22-2); and (3) a Statement of Policy Cost and Benefit Information (the "Statement"), (Doc. 22-3). Plaintiff does not dispute that the policy attached as Document 22-1—which includes both the COI Rate Provision and the Policy Endorsement—is integral to the Complaint. However, Plaintiff argues that the Actuarial Memorandum and the Statement should not be considered at the pleading stage.

First, Wilton claims that the "Actuarial Memorandum"—filed in redacted form publicly, (Doc. 22-2) and unredacted form under seal, (Doc. 24-2)—contains "obviously qualifying" language that modifies the contractual language in the COI Rate Provision of the Contract. (Mem. 14.) Wilton asserts that because the contractual terms in the Actuarial Memorandum are "integral to determining the contractual obligations" it owed to Plaintiff, as it is "identified and referenced" in the Contract, it should be considered. (*Id.* at 11 n.3.) Plaintiff, in turn, argues that because this document does not appear in the Complaint, is neither attached to nor quoted in the Complaint, was filed under seal and remains inaccessible to policyholders, and was never provided to Plaintiff, I should disregard it. (Opp'n 18–20.) Plaintiff further argues that Wilton's suggestion that the Actuarial Memorandum is incorporated by reference to the Complaint is legally unsound as a matter of New York insurance law. (*Id.* at 18.)

Wilton rightly notes that Plaintiff challenges only whether the Actuarial Memorandum is "incorporated by reference" in the Complaint, but does not dispute whether it is "integral" to the Complaint. (Reply 11.) Wilton's primary argument is that the Actuarial Memorandum is "integral" to the Complaint because the Actuarial Memorandum is part of the "procedures and standards" referenced in the Contract. (*Id.*) However, it is not clear that the Actuarial Memorandum is included as part of the "procedures and standards" contemplated by the

9

Contract. The question of what "procedures and standards" references is better left for a later stage in this litigation. I therefore do not find that the Actuarial Memorandum is integral to the Complaint. Nor do I find that it is incorporated by reference to the Complaint because New York Insurance Law prohibits such incorporation. *See* N.Y. Ins. Law § 3204(a)(1) ("[N]othing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued."). Plaintiff avers that the Actuarial Memorandum "was not endorsed upon nor attached to the Policy." (Opp'n 5.) Accordingly, I do not consider the Actuarial Memorandum because it is neither incorporated by reference nor integral to the Complaint.

Second, Wilton refers to a "Statement of Policy Cost and Benefit Information," (Doc. 22-3), which Wilton alleges, in accordance with New York insurance law, is provided to New York policy holders when they receive the physical copy of their UL Policy. (*See* Mem. 14 (citing N.Y. Ins. Law § 3209(e)).) Wilton does not request that this document be considered as incorporated into the Contract. Rather, Wilton argues that the Statement can be considered here because it was in Plaintiff's possession, as required by Section 3209(e) of the New York Insurance Law. (Mem. 14 & n.4.) *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (permitting courts to consider documents that "plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit" at the motion-to-dismiss stage).

Not so. In *Chambers*, the Second Circuit clarified *Cortec* and stated that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion," and that "mere notice or possession is not enough." *See Chambers*, 282 F.3d at 153 (emphasis in original).

10

Wilton's arguments concerning Section 3209(e)'s purported requirements establish, at best, that Plaintiff had "mere notice or possession" of it. Wilton fails to show that Plaintiff relied on the terms and effect of the Statement in drafting the Complaint. Indeed, Plaintiff's argument that the Statement is "not part of the policy contract and is not referenced in the Complaint," (Opp'n 21), indicates there was no such reliance. I therefore do not consider the Statement in deciding this motion to dismiss.

In sum, I will not consider either the Actuarial Memorandum or the Statement of Policy Cost and Benefit Information in assessing Wilton's motion to dismiss.

### B. *The Reasonableness of Plaintiff's Interpretation of the Contract*

Wilton's primary argument is that the Contract unambiguously grants it discretion to decide not to make any future changes to COI rates, regardless of whether it bases these changes exclusively on EFME. This argument is unavailing. To be clear, to the extent Plaintiff's interpretation is reasonable, or to the extent I find any ambiguity in the Contract, I must deny the motion to dismiss. *See Orchard Hill*, 830 F.3d at 156 (holding that a district court can only dismiss a breach-of-contract claim if the contract is unambiguous). Plaintiff's view, in sum, is that the Contract's statement that "[m]onthly COI rates are determined by us, based on our expectations as to future mortality experience" (i) requires Wilton to decrease COI rates, and (ii) to do so commensurate exclusively with improvements in EFME.

#### 1. Whether Wilton has Discretion Not to Change COI Rates

Wilton first argues that the Contract's language of "[a]ny change" in COI rates gives Wilton the discretion to make such changes. (Mem. 13.) Specifically, Wilton avers that the "any change" language does not require a change of COI rates, but instead suggests what may occur if Wilton determines to make the change at all. (*Id.*) Plaintiff counters by arguing that the

11

Contract's "if necessary" language clearly shows that there are situations where it is necessary for Wilton to change COI rates. (Opp'n 8.)

I agree with Plaintiff, and I find that the policy language is at least ambiguous, and that Plaintiff's interpretation is reasonable. As Plaintiff points out, courts interpreting similar language at the summary-judgment stage agree that such language does not clearly grant insurers unfettered discretion never to modify COI rates. *See, e.g.*, *PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*, 674 F. Supp. 3d 532, 544 (S.D. Iowa 2023) ("It is far from unambiguous that the language providing that COI rates that are 'based on' the EFME also provides that [insurer] retains a veto-like discretion to never adjust COI rates."); *Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins. Co.*, No. 18-CV-2863, 2022 WL 911739, at *5 (D. Minn. Mar. 29, 2022) (holding it was reasonable to interpret "based on" language to mean "mandatory and prospective").

### 2. Whether Wilton Adjusts COI Rates Based Exclusively On EFME

As with the contractual requirement to adjust the COI rate, I find that the Contract is also ambiguous as to whether "based on" as drafted means "based only on," and that Plaintiff's interpretation is reasonable. In considering this language, *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173 (2d Cir. 2019) is instructive. In that case, plaintiffs entered into a customer agreement which provided that their monthly variable rate for energy purchases was "based on XOOM's actual and estimated supply costs." *Id*. at 175 (emphasis omitted). In reversing the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), the Second Circuit held that the plaintiff's allegations that there were "deviations" between the rate charged and XOOM's actual and estimated supply costs was "sufficient to state a claim for breach of contract." *Id.* at 177. Although Wilton argues that *Mirkin* involved "an electricity service contract, [and] not a

12

life insurance policy," (Reply 9), Wilton fails to demonstrate why the Second Circuit's holding is inapplicable in the life-insurance context.

In any event, some courts in this District agree with Plaintiff's interpretation in the insurance context. *See, e.g.*, *Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of N.Y.*, No. 19-CV-6004, 2024 WL 1349221, at *6 (S.D.N.Y. Mar. 29, 2024) (stating that "based on" language "'means that there must be a significant relationship between a number and any change in a variable that number is "based on," particularly when only one variable is mentioned'" (quoting *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 481 (C.D. Cal. 2012))); *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 471 (S.D.N.Y. 2014) (finding that it was "reasonable" to interpret contractual language of "based on" to be "exhaustive" and limited to only enumerated factors). Other courts outside of this Circuit find similarly. *See, e.g.*, *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763–764 (8th Cir. 2020) (holding that it is unreasonable to interpret "based on" language to allow insurer to "be free to incorporate other, unlisted factors into this calculation"); *Meek v. Kansas City Life Ins. Co.*, 664 F. Supp. 3d 923, 925 (W.D. Mo. 2023) (interpreting "based on" language to require the insurer "to apply its then-current expectations as to future mortality experience when it calculated the monthly COI"), *aff'd*, 126 F.4th 577 (8th Cir. 2025); *PHT Holding II*, 674 F. Supp. 3d at 544 ("It is far from unambiguous that the language providing that COI rates that are 'based on' the EFME also provides that [insurer] retains a veto-like discretion to never adjust COI rates."); *ReliaStar*, 2022 WL 911739, at *5 (finding that it was "reasonable" to interpret contractual language of "based on" to "require that COI rates be based only on EFME").

Wilton, in turn, relies on two Eleventh Circuit cases, *Slam Dunk I, LLC v. Connecticut General Life Insurance Co.*, 853 F. App'x 451 (11th Cir. 2021) and *Advance Trust & Life*

13

*Escrow Services, LTA v. Protective Life Insurance Co.*, 93 F.4th 1315 (11th Cir. 2024). (*See* Mem. 15–16; Doc. 46.) First, Wilton's reliance on *Slam Dunk* to support its argument regarding its unfettered discretion is misplaced. The relevant discretionary language at issue in *Slam Dunk* is materially different from the language at issue here. Specifically, the contractual language in *Slam Dunk* stated that "[a]djustment in the Monthly [COI] Rates *may* be made by the [insurer] from time to time, but not more than once a year." 853 F. App'x at 452. In contrast to the discretionary language of "may," the Contract here states that Wilton "change[s] the cost of insurance rates in conjunction with [its review]" "if necessary." (Contract 12.) This difference is material enough to render Wilton's reliance on *Slam Dunk* inapposite. Second, even as the court in *Protective Life* held that "based on" was not exclusive or exhaustive, it recognized that "the circuit courts are split on the meaning of the 'based on' term as to COI rates." *Protective Life*, 93 F.4th at 1332. Even as these out-of-circuit cases may support Wilton's argument that its interpretation of the Contract is reasonable, I do not find them to render Plaintiff's interpretation as unreasonable.

A split in authority may not, by itself, be sufficient to render an insurance contract ambiguous. However, the differing opinions from different courts further support Plaintiff's argument that the Contract here "is susceptible to two reasonable interpretations." *Zurich Am. Ins. Co. v. Wausau Bus. Ins. Co.*, 206 F. Supp. 3d 818, 825 (S.D.N.Y. 2016), *aff'd*, 710 F. App'x 3 (2d Cir. 2017). Accordingly, I find that Plaintiff's interpretation of the Contract is reasonable, and that the Contract is, at a minimum, ambiguous as to whether it requires Wilton prospectively to decrease COI rates when EFME increases.

Crucially, the meaning of an ambiguous contract is a question of fact that "cannot be resolved by the court on a motion to dismiss." *Pujals v. Standard Chartered Bank*, 533 F. App'x

14

7, 10 (2d Cir. 2013); *accord Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("[I]f a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim."). Plaintiff therefore plausibly alleges a breach-of-contract claim.

### C. *The Sufficiency of Plaintiff's Factual Support for its Claim that Mortality Has Improved*

I also find that Plaintiff has plausibly alleged improved mortality of those accounted for during the policy pricing, and that Wilton's argument to the contrary injects questions of fact that are not appropriate at the pleading stage. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("[A] ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact."). The Complaint sufficiently alleges, using reports and data, that mortality rates have improved each year. (Comp. ¶¶ 19, 21–25). Indeed, in alleging that Plaintiff's claim is time barred, Wilton itself acknowledges the "public information regarding improving mortality dating back to 2001." (Mem. 24.) Plaintiff alleges that Wilton's EFME, as quantified in its mortality tables, is directly linked to the nationwide improvement in mortality as codified in the form of industry-wide tables, the same public information to which Wilton refers. (*Id.*) Accordingly, I find that Plaintiff has provided sufficient factual support for its allegation that mortality has improved.

### D. *Good Faith and Fair Dealing*

Wilton asserts that Plaintiff's claim of breach of the implied covenant of good faith and fair dealing must be dismissed because it is redundant and based on the same allegations underlying the express breach claim. (Reply 12.) "In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative; however, in some cases, a party may be in breach of its implied duty of good faith and fair dealing even if it is not in

15

breach of its express contractual obligations." *Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.*, No. 05-CV-8510, 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007) (internal quotation marks omitted).  A claim for breach of the implied covenant should not be dismissed as duplicative of a breach-of-contract claim if "there is a dispute over the meaning of the contract's express terms," *Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018), or, to put it another way, "where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain," *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, No. 20-CV-5015, 2021 WL 3668092, at *4 (S.D.N.Y. Aug. 17, 2021) (internal quotation marks omitted).

Although Plaintiff "cannot succeed on claims for both breach of an express contract term and breach of the implied covenant" if those claims are "based on the same facts," if the parties dispute the "meaning of the contract's express terms, there is no reason to bar a plaintiff from pursuing both types of claims in the alternative." *Spinelli*, 903 F.3d at 206.  At this stage, because I find the Contract ambiguous and have not determined its meaning, I cannot agree with Wilton's suggestion that there is nothing "precluding the Court from determining the meaning of the parties' contract."  (Reply 12.)  I find that it is too soon to dismiss Plaintiff's alternative basis of relief under the implied covenant of good faith and fair dealing.

16

### E. *Statute of Limitations*

Wilton also argues that Plaintiff's breach-of-contract claim accrued before 2017 and is therefore time barred. (Mem. 24–25.) I disagree. Under New York law, a cause of action upon a contract must be commenced within six years, N.Y. C.P.L.R. § 213(2), and a cause of action for breach of contract "ordinarily accrues and the limitations period begins to run upon breach," *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). Fundamental to Plaintiff's claim is its assertion that Wilton continually breaches the Contract every time it charges a new COI charge that is not "based on" improved EFME. Under the continuing-breach doctrine, where "a contract requires continuing performance over a period of time"—as the Contract requires—"each successive breach may begin the statute of limitations running anew." *Gardner*, 480 F.3d at 150. Accordingly, Plaintiff's claim is not time barred.

## V. Conclusion

For these reasons, Wilton's motion to dismiss the Complaint is DENIED. Plaintiff's letter motion to seal its opposition brief, (Doc. 29), is GRANTED. The Clerk of Court is respectfully directed to terminate the motion pending at Document 20 (motion to dismiss) and Document 29 (letter motion to seal).

SO ORDERED.

Dated: June 5, 2025
      New York, New York

_____
Vernon S. Broderick
United States District Judge